Estate of Henry B. Johnson, Deceased, by Augusta Johnson, as Executrix of the Last Will and Testament of said Henry B. Johnson, Deceased, v. Commissioner.
Estate of Johnson v. Commissioner
Docket Nos. 106361, 108400.
United States Tax Court
1942 Tax Ct. Memo LEXIS 70; 1 T.C.M. (CCH) 134; T.C.M. (RIA) 42618; November 27, 1942
*70 Ralph Q. Kelly, Esq., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, J.: The question presented to us in these cases, duly consolidated involves income taxes for the calendar years 1938 and 1939, as to which the Commissioner determined deficiencies of $1,064.39 and $1,299.10, respectively, all of which is in issue, except a minor portion of the deficiency for 1939, which is not contested and will therefore be reflected in decision under Rule 50. All facts have been stipulated. The stipulation is by reference adopted as our findings of fact herein, and only such facts will be stated as are necessary to disposition of the issue at hand. The income tax returns involved were filed with the collector for the second district of New York. The petitioner has died since the filing of the petitions and his executrix has been duly substituted as party; however, for convenience and clarity the deceased petitioner will be referred to as the taxpayer. [The Facts] The issue is: Did the Commissioner err in disallowing as deductions from gross income claims for partial worthlessness of debts in each of the taxable years and a claim of *71 total worthlessness of a debt for the year 1939? Concisely stated, the pertinent facts are that the taxpayer, the president and heavy stockholder in Suffolk County Land Co., hereinafter called the company, a corporation owning and selling land for restricted homes and estates, advanced, with other stockholders, various sums of money to the corporation. So far as here material the advances were unsecured, and consisted of: (1) $40,994.92, represented by a promissory note executed in 1934; (2) $17,949.64 on open account, lent between 1930 and 1938; and (3) $2,025.80 cash advances on open account made in 1939. In his return for 1938 the taxpayer, who kept his books and filed his income tax returns on a cash basis, deducted one-third of the items of $40,994.92 and $17,949.64 on the grounds of partial worthlessness of debts. In his return for 1939 he did the same; also deducted in full the $2,025.80 item. The deductions were all disallowed by the Commissioner in the deficiency notices. The company, the owner of a large tract of land, sold land in 1920 in substantial amounts and for full prices. It did not press sales from 1921 to 1924. In 1925 and 1926 total sales were $37,325. Few or *72 no sales were made from 1927 to 1937. In 1937 substantial sales were made at full prices, but since that time few or no sales have been made. A sales campaign was conducted in 1938 without success and the selling agent was discharged in December 1939. As of December 31, 1938, the petitioner appraised the various parcels of property belonging to the company at $421,329.98. There was no material change in these values for several years up to and including 1939. The company had, during 1938, revalued its properties at $394,533.75 and charged to profit and loss carrying charges of $183,539.96, which had been charged to property account. Valuing the property at $421,329.98, the company, on December 31, 1938, had assets of $423,528.35 and liabilities of $637,773.96. Other than the advances to the company in which the taxpayer had participated, the liabilities consisted in effect of a purchase money first mortgage of $9,500 on certain properties, to strangers, and a second mortgage of $100,000 and a first mortgage of $16,000 on certain properties, both to stockholders, plus interest accrued on all mortgages. The company is still a going concern endeavoring to sell its property in the main *73 consisting of about 465 acres of unimproved real estate suitable for improvement for high-class homes. Since the filing of the petition the taxpayer and one Elizabeth R. Upham, another principal stockholder in the company, have died. The two estates have been advancing to the second mortgagee money to pay interest on the first mortgage and taxes on the property. [Opinion] Under these facts has the petitioner shown error by the Commissioner in disallowing the deductions claimed? The question, except as to the $2,025.80 claimed as a debt totally worthless in 1939, is one of partial worthlessness of debt, under section 23 (k), Revenue Act of 1938.[1] Based upon the statute, Regulations 101, article 23 (k)-1, [2] has been promulgated. The respondent argues that under this statute and regulation there must be a showing of such facts as to prove that the Commissioner should have been "satisfied that a debt is recoverable only in part," that such showing has not been presented, and that the Commissioner is not shown to have been arbitrary in the disallowances. In , discussing a statute identical with that here *74 under consideration, we said: These deductions are claimed under that portion of section 234 (a) (5), Revenue Act of 1926, which provides "when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part." The Commissioner is not "satisfied" that this debt was in the taxable years recoverable only to the extent which the petitioner now claims, and the question is whether the evidence is sufficiently strong to require a holding that he reasonably should have been so satisfied. * * * In (514), we relied upon and quoted the Bing case as authority for saying that the Commissioner not being satisfied that certain bonds were worthless to the extent claimed, the question presented was whether the evidence was sufficiently strong to require a holding that he should have been satisfied. Does the evidence before us make that showing? After examination of all of the facts, we do not think it does. Though the petitioner relies heavily upon comparison between values of the company's property and the corporate obligations as of December 31, 1938, it has been stipulated that *75 there was no material change in such values for several years prior to that date. The taxpayer was the one who appraised the property for the company. The principal amount of the corporate obligations apparently had also not materially changed since 1934, for aside from indebtedness existent previous to 1934, the obligations appearing on December 31, 1938, consisted in the main of advances to the company. As president of the company and the one who appraised its properties the taxpayer was obviously cognizant, through such several years of the company's financial position, and, if it was such as to require scaling down debts in 1938-1939, had knowledge of practically the same situation prior to that time; thus appearing not to have first ascertained partial worthlessness in 1938. It is clear that no particular event transpired in 1938 to reduce values or increase inability to discharge debts. Moreover, the appraised values arrived at by the taxpayer are no more than his conclusions, and ascertainment of worthlessness of debts is a matter of fact, and not merely of opinion. . The record does not disclose what *76 price the company's property might have been sold for in 1938 and 1939. In 1937 substantial amounts had been sold "at full prices." Perhaps sales could have been made in the taxable years at prices somewhat reduced, yet above two-thirds of "full prices" - whatever those prices may have been. Again, though liabilities on December 31, 1938, were $637,773.96, that amount includes interest as well as principal, "Accrued interest to January 2, 1934," and other items totaling $38,641.40 may include interest. The $234,299.29 item represents unsecured advances by the taxpayer and three other stockholders. The amount of interest does not appear in the record, but as the notes, renewed in 1934, were given in 1928, it appears that interest for the interim is contained in the $234,299.29. Since the advances represented by this item, as well as others, were unsecured, those making the advancements, including the taxpayer, were in the same position, and others had no more right to collect interest than did the taxpayer. Their claims for interest were not superior to his. Therefore, in calculating the worth of the taxpayer's claims against the company, the amount of interest included in unsecured *77 advances should not be deducted as liabilities, from assets, for the question is as to how much property is left free to pay principal. In short, of $637,773.96 liabilities listed, interest, in unknown amounts, is contained in a total of $272,940.69 liabilities listed, leaving free from interest (or interest upon secured debts) only $364,833 $27 liabilities listed - against assets of $423,528.35 upon the basis of property values as appraised by the taxpayer. This leaves a possibility of a considerable balance available to discharge principal debts of the unsecured stockholders-creditors, including the taxpayer. It is thus apparent that the taxpayer, on a parity with others advancing amounts without security, has not demonstrated that property was not available to discharge principal obligations above two-thirds of the amounts thereof, and the Commissioner should not be said to have been arbitrary or without reason in not being satisfied with the deductions claimed for worthlessness to the extent of one -third in 1939 and another one-third in 1939$ Moreover, with reference to 1939, in the face of the stipulation that property values did not change for several years up to *78 and including 1939, and with no showing of greatly increased corporate debts in that year, it is not within reason to think that in the course of the two taxable years the taxpayer's claims decreased to one-third of the value prior to January 1, 1938. On this point of partial worthlessness of debts, we sustain the Commissioner. It follows that error is not shown in denial of deduction because of claim of total worthlessness in 1939 of taxpayer's advance of $2,025.80. *79 Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(k) Bad Debts. - (1) General Rule. - Debts ascertained to be worthless and charged off within the taxable year * * *; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * ↩
2. ART. 23(k)-1. Bad Debts. - (a) Bad debts may be treated in either of two ways - (1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part, or * * * * *
(b) If all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. * * * Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. * * * In determining whether a debt is worthless in whole or in part the Commissioner will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. Partial deductions will be allowed with respect to specific debts only. * * * * *↩